25-12-66, and I'm going to, Al-Mashwali v. U.S. CIS. Thank you, Your Honors. May it please the Court, I would like to address four specific points. First, the discrepancy. Second, what U.S. CIS was really seeking, and why U.S. CIS's I-130 interview and denial was the improper vehicle. Three, why the Yemeni adjudication scheme is both abusive, violates equal protection, and the rights against self-incrimination. And four, the clear requirements under the code that U.S. CIS has completely rewritten solely for U.S. citizen Yemeni applicants. Since all the Chalut's evidence mirrors each other, I am citing to the oldest child in the car record for Ahmed. Despite the government's assertion that Mr. Ashwali explained the discrepancies multiple times through extensive evidence, including indisputable DNA evidence for the entire family, the extensive evidence begins in the car at 118. Even the I-130 application under his marriage where it asks where he ended to Mrs. Tabet, it said non-applicable. The DNA for the whole family is at car 242 and 368 through 381. Can I ask a question about the DNA? Yeah. Is DNA relevant in the ordinary case? And I understand that there's sort of maybe a Yemeni exception that actually didn't come into play here but could in other cases. But in the ordinary case, is DNA relevant to the elements of a parent-child relationship for a child born in wedlock, either as defined in the statute or as the regulation? So I've been practicing immigration law for over 20 years. I have four offices and people from all over the world. I have never had a DNA request from a non-Yemeni applicant. Okay, good, good. So the answer is no, it's not relevant. I mean, here there wasn't a DNA request, right? It was your client on his own offering DNA. No, no, there was a request in the RFE. So with Yemeni applicants, if you look at the policy memo, basically they are to suggest DNA. And if the DNA is – so they're not allowed to require it, but they're to suggest it. But they deny any case that does not have DNA. Here's what I'm concerned about. You've got a general policy and then you've got this case. Right. And this case may or may not have followed the general policy. And so we're going to adjudicate this case. You are emphasizing that your client provided DNA. But your client has steadfastly, in the context of this proceeding, indicated that these were children born in wedlock, and they were born in wedlock in particular to a particular spouse who was previously represented to be deceased. I'm trying to figure out, under this statute, why DNA would rebut the – or backfill the absence of the elements which, for a child born in wedlock, as far as I can tell, are a child born in wedlock to a living partner. So there's two answers here. And the government switched course. So, first, they agreed that the child was born in wedlock, which is why we filed the Yemeni adjudication scheme and provided the DNA and a whole bunch of other evidence. And then, if you look at their second NOID, they're going to say, they say, okay, we agree this is what – Well, did they agree or did they just sort of rotely follow their procedure and nobody had actually dived down into the record yet? Well, the second NOID – remember, we had already done – we had done the application. We had done the RFE, which was extensive, because we respond to these cases extensively because we know they get routinely denied. We then had a first notice of intent to deny, which was briefed in extensive evidence again. Then we get to the third NOID, and they say, okay, we reviewed this evidence, and we're saying this child was not born in wedlock. And so –  Who's saying the child's not born in wedlock? USCIS. We're saying that this child was not born in wedlock. Were they saying that or are they saying that he submitted fraudulent documents? They didn't say he submitted fraudulent documents. What they said is you submitted a death certificate for your first wife. And based on that, these kids were not – you haven't provided a divorce – you put divorced on your nationalization, which he was for his first wife. Maybe I'll ask that question another way. If – is submitting fraudulent documents a arbitrary – if they believe that the documents were submitted fraudulently or false, does that – how would that be an arbitrary and capricious decision? So – and this is something that we tried to remind. First of all, that was 20 years earlier and did not relate to this case. And so – and this is what – Twenty years earlier, I buy, but not relate to this case? I mean – Yes, because – Did I want to consider prior documents he's filed? So you could if he had filed a petition for his wife, but he didn't. He filed a petition for his children. Whose status as child recognized under the statute, if he's claiming they were born in wedlock, depends on proof that that's the case. And he's asserted wedlock to a particular person. Are you saying they can't look and say, wait a minute, you've previously submitted a death certificate for that person? Well, that's an interesting question. Because it's important to note that nowhere on the I-130 does it ask about mom or dad. It only asks about petitioner and beneficiary. It does not ask who the parents are of the child, whether the parents were married. The I-130 form does not ask if the children are born in or out of wedlock. And you can see all this at CAR 406 to 417. In fact, the only relationship that they ask about is between the petitioner and the beneficiary. They ask, is this a parent? Is this a spouse? Is this a brother? But doesn't the answer to the question, whether this is a parent, get resolved through different elements depending on the – I mean, there's four different – there's six different definitions of child, right?  So what would make somebody a parent for an adopted child is different from what would make somebody a parent for a child born out of wedlock versus what would make somebody a parent for the child born in wedlock. So those aren't distinct things under the law. So there's a child born in wedlock and there's a child born out of wedlock. The petition doesn't ask that. The statute says, look, we've got the ability to petition this type of child. And when they sent the second NOID, they said, look, we're going to assume that you need to provide secondary evidence because we do not believe this child was born in wedlock. And he did. This is such a rarity. This father – Point me to – I didn't understand them asking for more evidence because they didn't – I didn't understand, I guess, the relationship. I thought that they had already raised questions about the wedlock based on the prior documentation. Am I misunderstanding the course of things? So they sent an RFE addressing that. What's an RFE? An RFE is a request for evidence. Okay. And what – And they asked for the divorce certificate from mom. Okay. It's at that point we began to provide evidence by way of eight separate witness statements, family photos, which included his wife and children. And then we went on to the NOID. And they said, look – When you say NOID, just – I'm sorry, I don't – I apologize. Notice of intent to deny. Thanks. Which is a really serious notice. And we briefed and we addressed that issue. But they – when you say we briefed and addressed the issue, they gave a reason. They said, look, you've asserted and you continue to maintain this is a child – No, he hadn't asserted in this application. And that's where I want to bring the court back to the application. Nowhere in there is there a place to assert in the application. It was never addressed because it's not relevant. The only relevant thing is whether the relationship is valid. And what I really – I'm sorry. So someone – I don't know how far – I don't know how far you're asking us to take this. Let's pretend for a second – and I'm not saying they are – let's pretend the documents are, in fact, fraudulent. They are fraudulent. This application had no fraudulent application. I'm sorry? No, this application – But if they are, in fact, fraudulent, you are saying that has no relevance to any of the application that follows because it's only about the relationship to the child? That's not what I'm saying. Okay. Please explain. What I'm saying is there was not a – I've handled this case from the beginning. I'm very specific with these cases. And there was not a single fraudulent statement or fraudulent document produced in this case. And what I really want to get to is the most important thing because this is what this policy is about. And so I want to talk about what the purpose was. USCIS has no – I need you to back up just a second, though. I thought there had been representations made to the government that all four children were born to the mother who subsequently, it was shown by the records, had died before the birth dates that your client presented. What am I misunderstanding? There was nowhere in the application or the evidence except for the fact that they had asked for the marriage certificate and the mother was listed on the birth certificate, which was later proven by DNA evidence. There was not a single fraudulent document that was submitted. So you're saying there was no place in which a representation was made that she was the mother of all four. They did represent that she was the mother of all four on the birth certificate, and the DNA proved that. But the birth dates were after the death date on her death certificate. Correct, and that was addressed. And this is the part that I think is really, really important about these cases because the government has no doubt that this is the mom, has no doubt that the relationship is valid, it has no doubt that these children were born to these two parents. You've got a substantial amount of evidence, private schools, Western Union, pictures, photos over the years. There's a large part. And whether they had a relationship or whether they met the standard is not the issue in the case. I'm sorry. It took me a minute to get to the record for something you said quite some time ago. You say there's no representation in the I-130 that they're parents, but the box that was checked in number two, there's four different boxes. It's child. It's child who was born to parents who were married to each other at the time of the child's birth. I'm looking at Ahmad, and I'm looking at 406 in the car for that individual. Am I misreading that representation? Yeah. The box, and I have to go back and look at it, and I looked at it before I came here, it has four boxes. Yeah. Child, it starts with spouse, parent, spouse, brother, sister, child on the very first page. Correct. And the box that's checked is not parents who were not married to each other. It's parents who were married to each other at the time of the child's birth. Right? That sets this up as a claim for a parent-child relationship for a child that's born in wedlock. Okay. Right? Yeah, no, I have to go back and look at it, and I apologize if I missed that because I looked at it this morning because the old form only had those four boxes, and I did not catch the second part of that. I'll have to look at it. And this is an individual who had made representations before about marital status through various periods, including the times when the children were born, and then USCIS asked for more information. I'm just trying to make sure we're not taking – I understand you've done enough of these cases to have a real concern about a particular policy that's applied to individuals who have immigrated from a particular country. I'm looking at this case, and I'm trying to figure out whether what happened here is a function of that or whether it's a function of the specific claims that the individual made and failure to reconcile. You were going to start, and I apologize. You were going to start by explaining the discrepancy. Maybe you can explain it now. I think your client's had a lot of time to explain it and hasn't. Yeah, he has, and he did explain it. Where on the record? Tell me where on the record he explained it. Okay, so I have, first of all, the application, the DNA explains that, obviously, this is a valid relationship. No, no, no. That was not his – Do you want to – USCIS, the only thing they will accept in this case, and this is what we kept saying at the interview, is that this is not the place to circumvent self-incrimination, criminal investigation, waive Miranda rights. They are using these interviews as criminal investigations. So nothing other than a written statement by Mr. Ashwale that says I submitted a fraudulent marriage document and I was really married would have been accepted in this case. Or that she wasn't dead or something, right? No. They specifically, when we went to the interview, we reminded them, and we frequently remind them, and I want to turn the court to a very important case. We frequently remind them that this is not the place to re-adjudicate the citizenship of a petitioner. That place to do that, if you want to denounce citizenship, is in district court. This is also not the place to do a criminal investigation, which they frequently do. And I'd like to turn the court to – So you're saying – Okay, so I just want to make sure – We are trying to figure out, I think, the question presented to us is, was the action of the agency arbitrary and capricious in the face of a documentary inconsistency? And the responses I'm getting sound to me like you say it was inappropriate for them to consider the documentary inconsistency because they have DNA evidence. Is that wrong? No, I'm not saying it wasn't – I think they should consider it. So go ahead and consider that document. Okay, so in – And then look at the fact that you have DNA. Okay, so you want the DNA –  You want us to adopt a rule that says that the presence of the DNA, which establishes paternity, overcomes any documentary inconsistency. Is that the rule you're asking us to establish today? No. What I'm asking is to look at the second NOID, Notice of Intent to Deny, issued by – I apologize. I'm going to look at the second NOID. Okay, I'll find it later. If you look at the second NOID, and we pointed this out twice, first in our opening brief and the reply brief, they did an about-face, and they said, okay, we're going to assume that this child is not born in wedlock, and you need to provide all the secondary evidence, which is the other section which says if we can't find that a child was born in wedlock, then we need all the secondary evidence. He provided private schools. He pays private schools. He provided Western Union receipts. He provided trips. He provided the fact that he visits them once a year for every six months. Right, so if he had from the beginning said this child – if he had had to meet the criteria for a child not born in wedlock, it is your position that he would meet them. And you're saying that we got automatically put into that bucket, notwithstanding the fact that he represented that they were in wedlock and there was some concern about the legitimacy of his documents. Is that what you're saying? Yes. And the fact is, is if you look at the application under marriage ended, he did put non-applicable. So once we took over the petition, there was no place. His position is here's the marriage certificate. He was married all along. We didn't put an end date on the application. Here's all the evidence to prove all of these children. What I want to point the court to that this is really important is in the Northern District of New York, there's case 1519CR00417. It's United States of America versus Mohammed Abdul Saleh. And this is not only one. There are several of these cases. And what happened in that case is he went to the interview. His grandfather had migrated under a different name. Then his father just assumed that name, and, of course, he came in as a child and also assumed that name. He went to one of these interviews that are set up pretextual for investigation and criminal and violate all of the policies. He then signed a statement that, yes, his grandfather had this name in Yemen. His father had this name in Yemen. And technically, because they had that, that would be his name. After that, they took that statement, and they went into criminal court, and they pulled up his passport. Now, this is a kid who never used that name, but made him sign a statement that it's related because that's what his grandfather's name was. He went into criminal court, and they charged him, and he was looking at serving 20 years in jail on his passport application. Other names used, it had said N.A. or none. I'm struggling, and that may be a compelling case, but that seems like this case. I think this case is the case before us. And I think I hear what you're saying. They suspect that he initially presented fraudulent documents in the process of getting his citizenship in the first place or his status in the first place. And they're trying to force him to admit that to incriminate himself. That's, I think, what you're saying. Yeah, the whole – if you look at – but are you suggesting that it's out of bounds for USCIS to say, you've presented this merit certificate. Either that's false, or either the stuff you're saying now is false or what you said before is false, and we can't credit your assertion that these children were born in wedlock to this individual based on the conflict in the documentation. Is that out of bounds? That makes us different from the cases you're describing. So I think it is out of bounds because what they wanted was a sworn statement by him, and they were accepting nothing else. We provided affidavits that this was not correct information, that the parties were still married. We provided pictures. We provided all the evidence you could possibly show to show that, yes, including the way we filled out the forms, yes, he married this woman in 1990. He never divorced her, which is done in a lot – whether we agree or we disagree – is done in polygamous cases because people get bad advice. Like people go and get bad advice and say, you're going to be arrested if you do this. This is what I say in my office. I say, look, if you smoke marijuana in New York, you can't be arrested in Alabama. If you're polygamous in Yemen, you cannot be arrested for it, but not everybody advises that. So is it your position, and I think it may be the federal government's position in some of these cases, but that for a child born in wedlock, DNA evidence is relevant? I mean, there was a common law that DNA evidence was irrelevant. It didn't matter who the parent was. It was who was married to the one who gave birth. In Yemen, it's required. I'm trying to figure out whether the federal statute here embodies that common law view, in which case DNA evidence would be literally irrelevant, or whether it involves a different view and it uses the child born in wedlock as a proxy for what you would call a DNA connection between a mother who gave birth and the father. So the immigration does not follow the common law concept.  And I think because of the issue that's pervasive in all immigration cases, where bringing one child here to work in a store changes the lives of a whole village. So there are cases in immigration where children have been brought, like if I have all girls and I need a boy to come here and work, I might bring my brother's son and say it's my son. So that has happened in many, many cases. But the only community that's being... If this was equally applied towards all cases, okay, then we could. But the only community that's being targeted is U.S. citizens that are of Yemeni descent. Okay. I think we have you, Yargen. We'll get to hear from you again in rebuttal. Thank you. Attorney Waterman.  Good morning. May it please the Court. Assistant U.S. Attorney Brandon Waterman for the government. Petitioner came to the agency petitioning for the beneficiary children, asserting that they were born in wedlock to a specific mother who the petitioner himself had previously said died. Did the I-130 name the mother or did it just check the box that said born in wedlock? It certainly checked the box, Your Honor. The mother's name is listed on the I-130. If we're looking at the car for Ahmed, it's page 409. Thank you. For where it asks names of all your spouses, and Ms. Tepet is listed as the first spouse. Okay, so it doesn't list her in the context of being the mother for the child. It lists her as a prior spouse. I think that's correct, Your Honor. I don't know that the I-130 specifically asked the question, but the box was checked to say that these children, the classification sought was a child who was born to parents who were married to each other at the times of the child's birth. As demonstrated on the birth certificates, they list the mother, Ms. Tepet, but then USCIS has a record submitted by Mr. Al-Mashwali himself that stated in 1997 she died, but the children were born in 2002, 2008, and 2010. USCIS had ample reason to question validity and the credibility of the documents before them. They asked multiple times for a request for evidence, an interview, and the notices of intent to deny. Right, but aren't there kind of two different things? One is evidence of whether or not he submitted fraudulent documents, and the other one is evidence as to whether or not he proved that the children were his. And if we think that there was sufficient evidence provided that the children are his, why does fraudulent documents matter? Certainly, Your Honor. I think there are two different things. So the petitioner here had petitioned for the children as being born in wedlock, and that required a birth certificate. And that birth certificate had to show the parents, the mother and the father, for the children. That's how you satisfy that these children themselves satisfied. Okay, but if he had checked another box and said that they were born out of wedlock, I think you would agree that he has presented evidence that is consistent with that, right, and the standards that you guys demand, right? The pictures, the DNA, right? So if he checked just the wrong— So I want to know how much work is being done by the fact that the documents have an inconsistency and whether or not this is the court, with the question that we are asking when what is being appealed is whether or not these are the children of his and he has petitioned for them to come over, if we're the ones that are supposed to be getting in the business of figuring out whether or not he made a false claim of citizenship, et cetera. Certainly, Your Honor. We're not looking for an investigation into a citizenship issue. Yeah, I'm not asking you to make any representations about what you're trying to do. I'm asking you to let me know, I guess, first the question, if he had said out of wedlock, would they have proven it? Or is there at least a reasonable— at least is the evidence submitted consistent with having met the criteria for what is used to establish paternity when someone is out of wedlock? I think that it's all bound up with the discrepancy, Your Honor. There is inconsistent information in the record, and that calls into question everything that's before the agency. And the BIA in that Matter of Ho Decision back in 1988 has specifically said that the petitioner bears the burden to come forth with evidence that resolves inconsistencies in the record so that the fact that we have a birth certificate that is inconsistent with a prior death certificate, that calls into question the validity of the documents before the agency, and the agency has the authority to determine the weight and the credibility of those documents. And so if the petitioner came forward and said these children were— Okay, but if it's out of wedlock, don't they just have to produce paternity and a bona fide parent-child relationship? So would you say that the DNA parts the paternity and the pictures showing repeated, consistent interactions establish the bona fide parent-child relationship? Standing here, I don't think I can admit that, Your Honor. That is for the agency to weigh when they look at it. There are inconsistencies. But the BIA, in fact, invited him. I mean, said that when he dismissed the appeals, they said the plaintiffs could file new I-130s in which they pursue this alternative illegitimate child theory, right? That's correct, Your Honor. If the petitioner wants to check the box and seek classification for the children in a different way, he is certainly welcome to do that. Nothing precludes that. And at that point, he can provide the evidence that supports that classification. The issue here is that the box checked isn't supported based on the record. There's discrepancies that were never explained before the agency. But even if he pursued the alternative pathway, though, it's unlikely that the inconsistency issue would go away, right? It would likely probably still be part of the record, but the petitioner has the opportunity, always has the opportunity, to come forth and explain it. And that was never done below. The submission of the DNA evidence does not resolve the question of the inconsistent death certificate and the dates on the birth certificate. And is it right that the agency was demanding a sworn statement? They had requested a sworn statement, but the petition itself was not denied for failure to provide it. It was denied because the discrepancy, the major discrepancy, was never resolved. It had never been answered. And that was a reasonable position for the agency to take, and under the arbitrary and capricious standard, we would argue that. What if he had said, you're right, I submitted false documents with respect to my, when I was trying to get my status. That is what explains the discrepancy, but these are my children. Would the fact of an admission to the false documents preclude the bringing over of the children? Is that a grounds for denying a petition for the children? I am not familiar enough with that, Your Honor, to answer that question. The bottom line is that it didn't happen here. He had an opportunity to explain the discrepancies multiple times, and he never did. The agency was well within their discretion in weighing the evidence before them to deny the petition because of this discrepancy that was left unanswered. If the Court has nothing further, we'd ask that the Court refer. Well, I have a little bit. One of the things I'm struggling with is there is this avowed, I mean, it's not like we're reading between the lines. There are separate processes for processing these kinds of applications for immigrants from Yemen. And in this case, and I wish I had the citation in front of me, there are no records. I think I'm looking at one where they say the defendants, in regards to adjudicating Yemen petitions, the officer always takes a sworn statement. And so this is a box that's sort of checked in the context of asking for more information. And I'm trying to figure out the extent to which we need to engage with this equal protection issue in this case. I'm understanding that there are reasons why it may fall outside of that, but it seems like at least some looking at some during the course of the visit, you were advised by your attorney not to give a sworn statement. Please note, in regards to adjudicating Yemen petitions, the officer always takes a sworn statement. To the extent that's not a requirement for people from other countries, is that an equal protection problem, wholly apart from sort of the specific weirdnesses in this application? We would say no, and for at least two reasons, Your Honor. Here, there's no evidence in the record that the denials were based on any sort of differential treatment between the countries. What we have here is discrepancies in the record that were never answered. And separately, the law allows the government to treat countries differently when evaluating the documents that are submitted. Every country has a different record-keeping system, and the United States government is familiar and is vested with the authority to set forth procedures on how to interpret and what reliance to give on those. Are there any other countries with respect to whom there's any sort of blanket USCIS policy of not relying on their document? I don't know that there's a blanket policy. There are other countries, certainly, that fall within, that have issues with their record-keeping, and certainly there are other, my understanding is there are other countries' specific guidance for USCIS to adjudicate within the, I think it's the adjudicator's field office manual with USCIS. So, yes, there are other countries. It's certainly not Yemen. My understanding is that this Yemen guidance was replaced several years ago to more of a, I think it's a more generalized country-specific evaluation for adjudicators. But at the end of the day, these are tools that are available in any case. It's just that USCIS is determined for these sort of cases, with primary documents that come from Yemen, a closer look may be required or additional evidence required. In this case, that played no role. Ultimately, these petitions were denied because of this major discrepancy that was left unanswered after the agency asked time and time again for an explanation. The Yemen policy guidance, whatever we want to refer to it as, simply didn't play a role, and so this court doesn't have to reach the substantive question there. And again, I ask that the court affirm the judgment below. Thank you. Attorney Goldberg. I have just a few quick points. First of all, one of the things that the only thing the government would have accepted would have been a sworn statement from him. That would have been malpractice if my attorney had gone into the interview and allowed my client to do that. Okay, but are we really just in a position where your client might be making the choice between jeopardizing their status or not being able to bring over their children, and your client is making a choice of going to jail or living with your children? Yeah. So I disagree because the government, when they submitted the NOID, gave us other avenues to address that, and we did. We addressed that through the principal. We addressed that through eight sworn declarations. We addressed that through Yemeni law. Okay, so let me ask. Yeah, let me just ask one thing, though. Is there a basis, assuming, let's just pretend, that the documents are fraudulent? The one document. The one document is fraudulent. Would that alone be a basis for rejecting the petition just because? No. And where is the law that says that? Would it be a basis to object? No. If he would have given a sworn statement, basically, that says, yeah, this is the case, then there would be no basis to deny that petition because of all the evidence that was also submitted. And one thing that's important is we did the same thing to dispute it. We gave them Yemeni law, and under Yemeni law, a child born out of wedlock is not allowed to have the father's name. In fact, it's a crime in Yemen. So the fact that the government issued these documents with the father's name on them was also indicative, and we wrote a whole brief on it, of the fact that the children were born in wedlock. But isn't the problem that your argument assumes that, of course, we're accepting the validity of these documents when the same individual has submitted documents also with the authority of the government that are in tension with that? That's, I think, the problem USCIS is in because they can't just assume they're valid when the last batch wasn't. So then why trust his statement? Why not take all these outside? If you're not going to trust him because he submitted, allegedly, this fraudulent document, why are you going to trust his statement? Why not take eight declarations, the Yemeni authority certificates, the photos, the Western Union, all this conclusive evidence should be way more valid than a statement. And so the other thing that I want to point out is about the flipping of the statute is there's a Supreme Court case, and if I may, I'll put it on the docket if the court will allow me. It talks about nonmaterial. So there's materiality in these applications. So if the child qualifies under the section, which is 1101, defined as a child, if a box is marked that this child was born in wedlock, but yet they qualify under another section, it's a nonmaterial misrepresentation, and this case is approvable. What's the case? I don't have it off the top of my head. I apologize. I can put it on the docket if the court will allow me. I'll put the case on the docket. There's a whole analysis. You could just submit a letter identifying the case so that your opposition can also comment on it. Okay. I think this is a really important case. Every time we try to bring this equal protection claim, the case is settled. The reason the Yemeni policy memo allegedly went away was because of two of our cases where the court keeps indicating that this adjudication scheme is most likely unconstitutional, but they keep settling the case. In fact, the government even cited the case that we had brought in EDNY, and when we finally brought the issue up here, the government settled it, and that's what keeps happening. I think this case needs to be remanded back to the district court, and the equal protection claim needs to be explored in more detail. We're just starting to see this stuff come out through some of the TPS cases in which countries are persecuted based on what the dissent of the U.S. citizen. Could I just follow up with a question? So the case that you're proposing that we scrutinize suggests that the agency needs to disregard nonmaterial errors, I suppose. Is that right? Well, it's not even nonmaterial misrepresentations. Misrepresentations? We use the Supreme Court, and it says nonmaterial misrepresentations. So my question is, this seems to me a very material misrepresentation about the status of the children at birth or requiring at least an explanation about Yemeni law because there are different pathways, different kinds of evidence that the agency then considers in assessing a naturalization in I-130. And because there are different pathways, it seems to me this is not just an immaterial slip of the pen. So the court has found that it's nonmaterial. The way it works for materiality in these cases is if under the analysis, like let's say I bring a child that's not my biological child, and I lie and I say, this is my biological child, that would be a material misrepresentation because that child is not eligible for the visa under any circumstances, right? But if it's nonmaterial, if, for example, if I say the child is born in wedlock or I say the child is my stepchild and really the child is born out of wedlock or the child is my biological child, that for purposes under this case is considered nonmaterial because the child qualifies under the statute under one of the items. And it doesn't matter what item that the child qualifies under as long as one of the items. If the child would have not qualified under any circumstances, that's what the court considers material. So this case isn't cited in your brief. It does seem like it would have been a fairly central point to make. I agree, and I apologize, and I think I just couldn't figure it out. You'll send it to us, and we'll see what it says.  Let me just, I want to make sure, I want to understand because I confess that with reading the brief, it was a little bit hard for me to distill your equal protection claim. So could you say in one sentence, maybe two, but not a paragraph, what in this case, not in the general practices, but except in so far as it explicitly affected this case, is the equal protection act that violated your client's equal protection in this case? Yes, I think there's a general target of Yemeni Muslim population, and a lot of these interviews include the Joint Terrorist Task Force, the FBI, and this is a pretextual. Okay, so your equal protection claim is not this act, you know, asking to do this or that. Your claim is a much broader claim that the USCIS is out to get Yemeni, or not out to get, but is biased against Yemeni applicants, and that's manifested here somehow. Yeah, and they're using these interviews to create criminal charges. In this case, again, again, so I hear the broadcast. What was wrong with this interview? What was inappropriate from an equal protection standpoint about this interview here? Because they are using it for, A, a criminal investigation, and to violate the right to fire against protection against self-incrimination. And so we will have to—  If he had not submitted a document that didn't create some doubt about the accuracy of the document, in order for there to have been an equal protection, I mean, that's the explanation, right? So in order for there to be an equal protection violation, you would need to say that there is a policy of not interrogating other groups when they submit a document that is hard to reconcile with other documents. And the other fact is, like, interesting about this criminal case, Mr. Kushner came in the same way, but they didn't bring— Mr. Kushner's grandfather came in the same way, but they're not targeting anybody else from other— There's no sworn statement that is mandatory. DNA is mandatory. All these things are mandatory for Yemeni. And the sworn statements are not really used— So are you saying that his petition was denied because he's Yemeni? Are you saying that they only asked him for an interview because he's Yemeni and not because of this other reason? Yeah, the interview was mandatory for Yemeni, except if you had provided DNA. The policy memorandum says if you provide DNA, you do not need an interview. However, even in all my cases that have DNA, they still require the interview. They still require the sworn statement. Okay, but in this—I mean, what's hard is— and you may or may not have a compelling equal protection claim on behalf of someone, but I'm trying to figure out how to— Is there anything about your equal protection argument that takes into account the specific facts here that involve discrepant documentation? In other words, if somebody who immigrated here from France and then filed an I-130 and there was the same problem where they had been married to someone else at the time they got citizenship and then they said this other person was deceased and then now there's like—would you say that it was inappropriate for USCIS to bring them in for an interview and ask them to explain the discrepancy? So they don't, and that's my point. And what's the evidence that we have for they don't? Well, and that was why we had wanted limited discovery because there— listen, I can take some of the cases that I have and the cases that I know and they're just approved on the documents, even with prior discrepancies, but what I had wanted was specific, official, limited discovery, which was denied. Got it. Which I thought was really important because I think it would have highlighted my points. Okay. All right. Thank you very much, both of you, an interesting case. Appreciate your arguments, and we will take it under consideration in your advisement.